IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF GEORGIA

| | | |
|---|---|---|
| **DENNIS GARY NEVILLE** | ) | Chapter 11 Case |
| | ) | |
| *Debtor.* | ) | Case No. 13-40729 |

MOTION FOR AUTHORIZATION TO SELL REAL PROPERTY FREE
AND CLEAR OF LIENS AND FOR RESERVATION OF SURCHARGE RIGHTS
UNDER 11 U.S.C. § 506 (c)

Comes now the above-named Debtor seeking an Order authorizing the sale of real property free and clear of liens pursuant to 11 U.S.C. § 363(f) and for reservation of surcharge rights under 11 U.S.C. § 506(c) and further shows as follows:

**JURISDICTION**

1.

This Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334. This matter constitutes a core proceeding pursuant to 28 U.S.C. § 157 (b)(2).

2.

The Debtor in possession filed the above-styled Chapter 11 bankruptcy case on August 4, 2014, and has remained a Debtor in possession since that date.

3.

The Debtor owns a parcel of land on which is located commercial buildings at **7607 Veterans Parkway, Columbus, GA** (the "Property"). The Property is more particularly described on Exhibit "A" attached hereto and made a part hereof by this reference.

N0701-0001-30

4.

Debtor wishes to sell the Property to Feeding the Valley Food Bank ("Purchaser") under the terms of a contract (the "Contract"), a copy of which is attached hereto as Exhibit "B" and incorporated herein by reference. The sale will be for cash in the amount of $2,525,000.00 payable at closing. The agreement provides that the sale is subject to Bankruptcy Court approval.

5.

Unpaid ad valorem property taxes in the approximate amount of $38,000 are owed and constitute a first priority lien against the property. It is anticipated they will be fully paid at closing of the sale.

6.

Southeast Canners, Inc. holds a second priority lien against the Property by virtue of a security deed dated October 25, 2013, and recorded in the Office of the Superior Court of Muscogee County, Georgia in Deed Book 11096, page 185, securing a debt with an approximate balance of $2,250,000 as of the date of the filing of this motion. It is anticipated that such lien will be paid and satisfied at the closing of the sale.

7.

Coldwell Banker Commercial Kennon Parker Duncan & Davis Realtors in Columbus, GA ("Realtor") has provided and will provide valuable services to Debtor for which they are entitled to be paid. Debtor has agreed to pay Realtor a commission at closing of 6% of the purchase price. The agreement to employ Realtor has been filed in the case.

8.

The Internal Revenue Service and the Georgia Department of Revenue have recorded liens against the Debtor for amounts those agencies claim are owed by the Debtor (the "Tax Claims") but

Southeast Canners, Inc. and Realtor's commission, Debtor proposes to hold the balance of said proceeds in the trust account of Debtor's counsel pending further order of the Court establishing the secured status, if any, of the Tax Claims and any additional surcharges.

9.

The Agreement between Debtor and Purchaser provides that Purchaser will have the benefit of a Due Diligence period of 120 days from the entry of an order authorizing the sale as contemplated herein during which Purchaser may undertake investigations, inspections and tests as Purchaser may deem necessary including but not limited to surveys, environmental tests and engineering surveys. Closing of the sale shall occur no later than 30 days from the expiration of the Due Diligence period. Debtor submits that such terms are ordinary and reasonable in sales such as the sale contemplated by this motion.

10.

Debtor in possession moves for authorization to sell the property pursuant to 11 U.S.C. § 363 (f) because all claims secured by the property are in dispute or Debtor believes that the secured claim holders will be paid in full at closing or will consent to the sale.

11.

Competing bids may be made in open Court and the Court will conduct an auction, if appropriate, under the terms and conditions set by the Court at the time of the auction if any potential purchasers wish to offer competing bids. The Court may impose appropriate conditions on any and all bidders and bids.

12.

The Debtor filed his Voluntary Chapter 11 Bankruptcy Petition in order to provide for a method of selling the Property. The Debtor contributed funds constituting a general retainer for

attorney fees and expenses in the Chapter 11 case, but it is anticipated that the retainer will be insufficient to pay all of attorney fees related to the sale of the Property. There are no other assets not subject to lien, with which to pay ad valorem taxes, U.S. Trustee fees, Attorney fees and other charges associated with the sale. There has been no waiver of any surcharge rights under 11 U.S.C. § 506 (c) and the Debtor is entitled to compensate his counsel for reasonable attorney fees as a reasonable, necessary cost and expense of preserving or disposing of such property as a benefit to the holder of the primary secured creditor, Southeast Canners. Surcharges for the payment of Realtor's commission, property taxes, U.S. Trustee fees and routine closing costs charged to seller under Exhibit "B" should be approved at the time of approval of the sale.

WHEREFORE, the Debtor prays for authority to sell the Property free and clear of liens and interest pursuant to 11 U.S.C. §§ 363 (b) and 363 (f), for a surcharge for U.S. Trustee fees, Realtor's commission and charges allocated to seller under Exhibit "B," pursuant to 11 U.S.C. § 506 (c), for a reservation of rights to claim an additional surcharge for attorney fees and expenses pursuant to 11 U.S.C. § 506 (c), and, for a determination that the sale is in good faith so as to entitle the Debtor and purchaser to the protections of 11 U.S.C. § 363 (m) and (n). The Debtor also prays for any and all further relief as the Court may deem appropriate.

This 17th day of February, 2015.

        PAGE, SCRANTOM, SPROUSE,
        TUCKER & FORD, P.C.


        By: s/Stephen G. Gunby
            Stephen G. Gunby
            Ga. Bar No.: 315212

1111 Bay Avenue, Third Floor
P. O. Box 1199
Columbus, Georgia 31902        Attorneys for Debtor
(706) 243-5630
sgg@psstf.com

N0701-0001-30

# EXHIBIT A

## Legal Description

All that lot, tract or parcel of land situate, lying and being in the City of Columbus, County of Muscogee and State of Georgia and being a part of Land Lot 40 of the 8th Land District of said County, as shown upon a map or plat entitled "Survey of Part of Land Lot 40, 8th District, Columbus, Muscogee County, Georgia", prepared by Moon, Meeks and Patrick, Inc., Civil Engineers, Columbus, Georgia, under date of August 10, 1979, a copy of which is recorded in Plat Book 72, Folio 17 in the Office of the Clerk of the Superior Court of Muscogee County, Georgia, and being more particularly described as follows: In order to arrive at the point of beginning of the property hereby conveyed, commence at an iron pin located at the point where the northerly margin of the right of way for Morton Street intersects the northwesterly margin of the right of way for Hamilton Road; and running thence in a northeasterly direction along the northwesterly margin of the right of way for Hamilton Road for a distance of 942.58 feet to an iron pin, WHICH LAST MENTIONED IRON PIN IS THE POINT OF BEGINNING OF THE PROPERTY HEREBY CONVEYED, and from said point of beginning running thence North 46 degrees 42 minutes 22 seconds West for a distance of 250.24 feet to an iron pin; running thence South 43 degrees 17 minutes 38 seconds West for a distance of 550 feet to an iron pin located on the southeasterly margin of the right of way for the Southern Railway Company, running thence in a northerly direction along a curve to the left formed by said southeasterly margin of the right of way for the Southern Railway Company (said curve having a radius of 2,914.93 feet) for a distance of 600.12 feet to an iron pin; running thence North 03 degrees 38 minutes 30 seconds East along said southeasterly margin of the right of way for the Southern Railway Company for a distance of 992.91 feet to an iron pin; running thence in a northerly direction along a curve to the left formed by said southeasterly margin of the right of way for the Southern Railway Company (said curve having a radius of 2,342.01 feet) for a distance of 126.97 feet to an iron pin; running thence South 25 degrees 30 minutes East for a distance of 1405.98 feet to an iron pin located on the northwesterly margin of the right of way for Hamilton Road; running thence in a southwesterly direction along a curve to the left formed by said northwesterly margin of the right of way for Hamilton Road (said curve having a radius of 5,754.65 feet) for a distance of 300 feet to the iron pin which marks the point of beginning of the property hereby conveyed. Located thereon is building numbered 7607 Veterans Parkway according to the present system of numbering in Columbus, Muscogee County, Georgia.



# COMMERCIAL REAL ESTATE SALES AGREEMENT

THIS COMMERCIAL REAL ESTATE SALES AGREEMENT (this "Agreement") is made as of the _____ day of February, 2015, between **Dennis G. Neville** ("**Seller**"), and **Feeding the Valley Food Bank** ("**Purchaser**") with Jordan Hart Commercial Services, LLC and Coldwell Banker Commercial/Kennon, Parker, Duncan & Davis Realtors ("Broker") joining herein.

IN CONSIDERATION OF the mutual promises and covenants contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. **Purchase and Sale.** Seller agrees to sell and Purchaser agrees to buy that certain real estate located in Muscogee County, Georgia, more particularly described on Exhibit "A" attached hereto and incorporated herein by reference, together with all appurtenances thereto and all buildings, improvements, fixtures, plants, trees, and shrubbery situated thereon (collectively called herein the "Property").

2. **Purchase Price and Earnest Money.**

    (a) The purchase price of the Property shall be **Two Million Five Hundred Twenty Five Thousand and 00/100 Dollars, ($2,525,000.00)**, which shall be paid at Closing (as hereinafter defined) in cash, certified funds, or by wire transfer, as adjusted by the hereinafter specified Closing prorations.

    (b) Within twenty-four (24) hours after the final acceptance date hereof (and for purposes of this Agreement the final acceptance date shall be the later of the dates shown beneath the signatures of Seller and Purchaser below), Purchaser agrees to deposit with the Broker the sum of **Ten Thousand and 00/100 Dollars ($10,000.00)** as earnest money (the "Earnest Money"). The Earnest Money shall be held in escrow to be applied for Purchaser's benefit against the purchase price at Closing (as hereinafter described) or as otherwise provided for by this Agreement. The Broker may, but shall have no obligation to invest the Earnest Money in an interest bearing account.

    (c) In the event that a dispute arises with respect to the distribution of the Earnest Money, Broker may, at its election, either (1) make a reasonable interpretation of this Agreement and disburse the Earnest Money accordingly, in which case, unless all parties expressly agree in writing to said disbursal, Broker shall give all parties fifteen (15) days notice in writing of Broker's intent to disburse, and thereupon any party which has not expressly agreed in writing to said disbursal must register its objection to disbursal in writing giving its reasons for objecting before the end of the fifteen (15) days' notice period, or all objections to disbursal shall be waived (but if an objection to disbursal is timely made, Broker shall apply to an appropriate court as provided in Subpart (2) of this sentence), or (2) apply to a court of competent jurisdiction for an order determining the party or parties to whom such funds shall be paid, and in such an event, all costs of such proceedings, together with all reasonable attorney's fees and costs incurred by Broker and/or the successful party or parties in connection therewith, shall be paid by the unsuccessful party or parties to such proceeding. The parties to this Agreement understand and acknowledge that disbursement of the Earnest Money can occur only (i) at

Contract – January 2014          Page -1-

Closing, (ii) upon written agreement signed by all parties having an interest, (iii) upon court order, or (iv) as otherwise set out herein. Purchaser and Seller agree that if a dispute arises between Purchaser and Seller as to the final disposition of all or part of the Earnest Money, (i) Broker shall be entitled to be compensated (from the Earnest Money or by the other parties, at Broker's election) for its costs and expenses, including reasonable attorney's fees, and (ii) in the event Broker either interpleads the Earnest Money into court or makes a disbursal upon a reasonable interpretation of this Agreement, the parties thereafter shall make no claim against Broker for the disputed Earnest Money and shall not seek damages from Broker by reason thereof or by reason of any other matter arising out of this Agreement or the transaction contemplated hereunder.

3. **Seller's Warranties, Representations, and Agreements.** As an inducement to Purchaser to enter into this Agreement and to purchase the Property, Seller hereby makes the following representations and warranties to Purchaser:

(a) Seller has good and marketable, fee simple title to the Property and at the time of Closing, Seller will convey such title to Purchaser, except for (i) zoning ordinances affecting the Property, (ii) taxes not yet due and payable, (iii) easements of record which do not interfere with the Purchaser's intended use of the Property, and (iv) restrictive subdivision covenants of record for the Property, if any (such exceptions being hereinafter referred to as the "Permitted Exceptions"). It is agreed that the title herein required to be furnished by the Seller shall be good and marketable in accordance with the laws of the state where the Property is located, as supplemented by any applicable state Bar standards.

(b) All sewer, utility, and surface water drainage systems serving the Property pass directly from a public right of way or other public facility to the Property.

(c) The Property is presently zoned **GC** for **GENERAL COMMERCIAL**, and the Property is in full compliance with all applicable municipal codes and regulations. There are no commitments to governmental or quasi-governmental authorities or agencies which relate to zoning affecting the Property and there are no conditions of the Property's zoning which have not been completely fulfilled.

(d) Seller is in full possession of the Property and there are no written leases or possessory rights to the Property held by any other person, unless disclosed on Exhibit "B" attached hereto.

(e) To the best of Seller's knowledge, (i) no radioactive, chemical, or hazardous waste or materials or "hazardous substances" (as defined in the Comprehensive Environmental Response, Compensation and Liability Act of 1980), including without limiting the generality of the foregoing, any "hazardous waste" (as defined in the Resource Conservation and Recovery Act), have been stored, released, treated, or disposed of, or leaked or discharged on or under the Property or moved to it and no portion of the Property has been used as a dump or landfill or consists of filled in land; (ii) there have been no buried, partially buried, above ground or other tanks, storage vessels, drums or containers located on the Property, and if there have been any underground storage tank facilities previously located on the Property, the same have been removed in compliance with the closure rules established by relevant federal or state law or regulations; and (iii) there has never been a spill, leak, discharge, emission, escape,

Contract – January 2014        Page  -2-

leaching or disposal of the contents of any underground storage tank into ground water, surface water or subsurface soils.

    **(f)** Seller shall not sell, encumber, convey, or lease all or any portion of the Property or contract to do so, or cut any timber thereon or commit any waste of or to the Property from the final acceptance date to the Closing.

    **(g)** Seller has disclosed to Purchaser, in writing, at or before the execution of this Agreement, any knowledge Seller may have concerning any portion of the Property which Seller knows or believes to be classified, or has reason to believe might be classified, as a "Wetland" or as part of a one hundred year flood plain pursuant to regulations issued by the Environmental Protection Agency, U. S. Army Corps of Engineers, or by any statutes, ordinances, or other regulations as may be applicable thereto. If any portions of the Property are classified as a "Wetland" or as part of a one hundred year flood plain, in addition to those portions disclosed by Seller in writing as hereinabove required, Purchaser may elect to terminate this Agreement.

    4. **Destruction or Damage Prior to Closing Date.** If all or any material portion of the Property shall be condemned or damaged prior to Closing, or a bona fide threat of condemnation shall be made or discovered prior to Closing, or there shall be claimed against the Property any municipal code, ordinance, or regulatory violation, Purchaser may elect to (i) terminate this Agreement, or (ii) reduce the purchase price in the amount of the condemnation award received by Seller or the decrease in value caused by the damage to the Property, or (iii) receive the insurance proceeds plus a cash payment by Seller of the applicable deductible amount with respect to such damage, or (iv) reduce the purchase price in the amount necessary to bring the Property back to within municipal code, ordinance, or regulatory standards. Purchaser's election under this paragraph shall be exercised by giving written notice thereof to Seller within thirty (30) days after receipt of written notice from Seller of such taking or damage or of the existence of a threat of condemnation or the amount of the condemnation award or insurance proceeds payable with respect to such taking or damage, whichever is later.

    5. **Title Examination and Survey.** Purchaser shall have the right at any time prior to Closing to examine title to the Property and to advise Seller in writing of any defects or objections affecting title disclosed by such examination. Seller agrees to exercise its best efforts to clear any such defects or objections prior to Closing. If Seller cannot clear such defects or objections, then Purchaser may either (i) waive such defects or objections and close the transaction in accordance with the terms of this Agreement, or (ii) terminate this Agreement. Purchaser may also, at its expense, commission a survey of the Property from a registered land surveyor upon which to base a legal description of the Property, if Purchaser determines, in its discretion, that a more precise and accurate legal description of the Property may be drawn from a survey and the plat thereof. In the event Purchaser commissions such a survey, Seller agrees, subject to review and approval by Seller, to convey based upon a legal description drawn from the survey.

    6.    **Conditions to Closing by Purchaser.** The obligation of Purchaser to consummate the transactions contemplated hereby shall be subject to the satisfaction (or waiver by Purchaser) of the following conditions precedent:

    **(a)** All representations and warranties of Seller contained

herein shall have been true and correct on the date hereof and on the Closing Date and Seller shall have performed all agreements and covenants to be performed by it at or prior to Closing.

        (b) **Inspection and Due Diligence Period.** Purchaser shall have, in the sole discretion of Purchaser (i) completed such inspections, surveys, soil tests, percolation tests, environmental audits, termite investigation, and other tests and studies necessary to determine whether or not the Property is suitable for Purchaser's intended use and (ii) determined whether or not the Property is suitable for Purchaser's intended use (and for purposes of this Agreement Purchaser's intended use shall be Storage, Sales and Distribution and General Retail sales of food items, warehouse and storage). Purchaser or its agents shall have the right and privilege of going on the Property as needed to make such investigations, inspections and tests as Purchaser may deem necessary (and in connection with such inspections and tests Purchaser hereby agrees to indemnify Seller and hold Seller harmless from and against any and all claims, demands, losses, administrative proceedings, and expenses (including reasonable attorneys' fees) incurred by Seller as a result of any such investigations, inspections and tests performed by Purchaser and/or its Agents) except those damages Seller suffers solely as a result of discovery of pre-existing environmental conditions. Purchaser shall complete all of such inspections, surveys, tests, and studies within one hundred twenty (120) days from the final acceptance date, and if Purchaser shall not have rejected the Property, in writing, as not suitable for Purchaser's intended use, based upon such tests and studies, within the specified Inspection Period, this condition precedent shall be deemed to have been waived.

        (c) Any conditions precedent which are listed or described in Exhibit "B" to this Agreement.

Prior to the expiration of the Inspection and Due Diligence Period, should any of the foregoing described conditions precedent not be satisfied or waived in writing by Purchaser, then Purchaser may, at its option, terminate this Agreement by written notice to Seller and Broker, whereupon the Earnest Money shall be refunded to Purchaser and this Contract shall become null and void.

    7. **Closing.** The Closing of the transaction contemplated hereby (the "Closing") shall take place at such time and location, as the parties shall agree. The Closing shall occur on or before **thirty (30) days** from the expiration of the Inspection and Due Diligence Period, referred to in paragraph 6. (b) above.

    8. **Delivery at Closing.**

        (a) At Closing, Seller shall pay the Broker's commission, deliver possession of the Property, and deliver the following, which, if a document, shall be duly executed and in recordable form, if intended to be recorded:

        (1) General warranty deed conveying fee simple title to the Property, free and clear of all liens, restrictions and encumbrances except the Permitted Exceptions.

        (2) Such documents as are reasonably required by Purchaser's title insurer as a condition to insuring title to the Property without exceptions, other than the Permitted Exceptions,

including Seller's affidavit that no improvements, additions, alterations or repairs whatsoever have been made to the Property by Seller within the last ninety-five (95) days immediately preceding Closing, or if there have been any such improvements, additions, alterations or repairs that the providers thereof have been paid in full.

    **(3)** Seller's certificate that Seller's representations and warranties set forth herein are true and correct as of Closing.

    **(4)** An affidavit that Seller is not a foreign person within the meaning of Section 1445(f) of the Internal Revenue Code of 1986, as amended.

    **(5)** Seller's affidavit establishing that no amounts are required to be withheld at Closing for state income taxes (and in the event such affidavit is not provided, Seller authorizes the Closing agent or attorney to withhold any applicable amounts from Seller's net proceeds).

  **(b)** The parties hereto authorize any participant in the transaction contemplated hereby to file any informational return required by the Internal Revenue Code of 1986, as amended.

  **(c)** At Closing, the Broker shall deliver the Earnest Money to, or upon the instructions of, Seller.

  **9. Closing Prorations.** Property taxes and any rents and utility charges shall be prorated as of the date of Closing. If the current year's taxes are not known at the time of the Closing, the proration shall be based upon the previous year's taxes, and Purchaser and Seller agree to adjust between themselves any difference in the tax proration after the actual tax bill for the Closing year is available, and this provision shall survive the Closing.

  **10. Costs.** Seller shall pay Seller's attorney's fees and all real estate transfer taxes incident to this transaction. Purchaser shall pay the premium for issuance to Purchaser of an ALTA owner's policy of title insurance for the Property (if an ALTA Owner's policy id desired by Purchaser) without exception for any matter other than the Permitted Exceptions, the cost of any survey which Purchaser has elected to commission, any costs due to any lender financing Purchaser's purchase of the Property, all recording fees on recordable documents (except those necessary to clear any liens, restrictions and encumbrances other than the Permitted Exceptions, which shall be paid by Seller), and Purchaser's attorney's fees.

  **11. Defaults.** If the sale contemplated by this Agreement is not consummated due to a default of Seller, then the entire Earnest Money shall be promptly paid to Purchaser without deduction, and Purchaser shall have the right to seek specific performance of this Agreement. Seller and Purchaser have discussed and negotiated in good faith upon the question of the damages to be suffered by Seller in the event Purchaser defaults under this Agreement, and they hereby agree that liquidated damages in the amount of the Earnest Money are and will be reasonable. In the event of such default, Seller shall be entitled to receive the Earnest Money as its full and liquidated damages in lieu of all other rights and remedies which Seller may have against Purchaser at law on in equity for such default, including, without limitation, any right to seek specific performance.

Contract – January 2014    Page  -5-

12. **Brokers.**

    (a) Except as set forth in this Section 12, Seller and Purchaser each represent and warrant to the other that no commission or fee is or will be owed for brokerage or similar services in connection with this transaction as a result of its actions, and each of Purchaser and Seller agrees to indemnify and hold each other and Broker harmless from and against any and all liabilities, claims, costs or expenses (including attorney's fees) that may be imposed upon, incurred by or asserted against such other party and/or Broker by reason of any action taken by the indemnifying party which results in the imposition of or assertion against such other party and/or Broker of any liabilities, claims, costs or expenses. This provision shall survive any Closing or any termination of this Agreement.

    (b) In negotiating this Agreement, Broker has rendered a valuable service for which reason it is made a party to enable Broker to enforce its commission rights hereunder. Commission to be paid in connection with this Agreement has been negotiated between Seller and Broker, and Seller agrees to pay Broker **Six Percent (6%)** of the Purchase Price, due and payable at Closing or as otherwise provided herein. In the event there is no Closing due to Seller's default, hereunder, Seller agrees to pay the full commission to Broker on demand, and in such case Broker shall return the Earnest Money to Purchaser. Purchaser agrees that if there is no Closing due to Purchaser's default hereunder, Purchaser shall on demand pay Broker the full commission, and in such case, Broker shall pay to Seller the entire Earnest Money as Seller's liquidated damages in full settlement of any claim for damages, whereupon Broker shall be released from any and all liability for return of the Earnest Money to Purchaser.

    (c) Jordan Hart Commercial Services has acted for the Purchaser in this transaction, and has not represented the Seller notwithstanding any agreement for the payment of Broker's commission and Coldwell Banker Commercial/Kennon, Parker, Duncan & Davis Realtors has acted for the Seller in this transaction,.

13. **Transferability.** This Agreement may be assigned in part or in whole by Purchaser without the prior consent of the Seller.

14. **Documentation.** Within five (5) days of the final acceptance date, Seller shall deliver to Purchaser true and complete copies of any existing title policies pertaining to the Property, copies of any mortgages or security deeds encumbering any portion of the Property, copies of notes evidencing the indebtedness secured thereby, and copies of any surveys, site plans, floor plans, or topography maps that the Seller has in its possession.

Contract – January 2014        Page -6-

**15. Notices.** Whenever any notice, demand or request is required or permitted hereunder, such notice, demand or request shall be in writing and shall be hand-delivered in person or sent by United States Mail, registered or certified, with return receipt requested, postage prepaid, to the addresses set forth below:

| | |
|---|---|
| As to Seller: | Dennis G. Neville<br>505-5 Biggers Road<br>Columbus, Ga 31904<br>_____ |
| As to Purchaser: | Frank J. Sheppard, Executive Director<br>Feeding the Valley Food Bank<br>Post Office Box 8904<br>Columbus, GA 31908 |
| As to Broker: | Pete Hart<br>Jordan Hart Commercial Services, LLC<br>Company Brokerage License #<br>6001 River Road, Suite 100<br>Columbus, Georgia 31904<br>Telephone No. (706) 257-1155<br>Fax No. (706) 649-3017 |
| As to Broker: | Carson Cummings<br>Coldwell Banker Commercial<br>Kennon, Parker, Duncan & Davis Realtors<br>Company Brokerage License #<br>4621 River Road Suite A<br>Columbus, GA 31904<br>Telephone No. (706) 327-2255<br>Fax No. (706) |

Any notice, demand or request served upon the parties in the manner aforesaid shall be deemed sufficiently given and received for all purposes hereunder (1) at the time such notice, demand or request is hand-delivered in person, or (2) the next business day after being deposited with Federal Express or similar overnight courier service or (3) on the second day after the mailing of such notice, demand or request in the manner herein provided. Any party may change the address to which notice to it is to be sent by giving written notice to the other parties of such change.

**16. Miscellaneous.** No amendment to this Agreement shall be binding unless such amendment is in writing and executed by all parties with the same formality as this Agreement. If Purchaser elects to terminate this Agreement pursuant to Sections 3(g), 4, or 5, or if any of the conditions precedent to Purchaser's obligation to close hereunder are not met, subject to any rights of Seller or Broker, (i) the Earnest Money shall be returned to Purchaser on demand and (ii) no party shall have any further rights, duties or obligations hereunder (except for (i) any indemnity obligations of Purchaser under Section 6(b) hereof and (ii) any indemnity obligations of a party under Section 12(a) hereof, all of which shall survive any such termination). This Agreement shall inure to the benefit of and be binding upon the parties hereto and their respective heirs, successors, administrators, executors, and assigns. If

any term, covenant, or condition of this Agreement shall to any extent be invalid or unenforceable, the remainder of this Agreement shall not be affected thereby, and each term, covenant or condition of this Agreement shall be valid and be enforced to the fullest extent permitted by law. Time is of the essence of this Agreement. This Agreement shall be governed in all respects in accordance with the laws of the state in which the Property is located. All rights, powers, and privileges hereunder shall be cumulative with and not restricted to those given by law. If any time limit specified herein expires on a day which is not a regular business day, then such time limit shall be extended through the close of business on the next following regular business day. No failure of any party to exercise any power given hereunder or to insist upon strict compliance by any other party with its obligations hereunder and no custom or practice of the parties at variance with the terms hereof shall constitute a waiver of any party's right later to demand exact compliance with the terms hereof. All terms and conditions and stipulations in this Agreement, which the Parties agree shall be performed or fulfilled after the Closing, shall survive the Closing until such time as the conditions or stipulations are performed or fulfilled. This Agreement may be executed in several counterparts, each of which shall be deemed an original, but all such counterparts together shall constitute one and the same instrument.

17. **Special Stipulations.** Any special stipulations to which the parties may have agreed are set out on Exhibit "B", attached hereto and incorporated herein. In the event of any conflict between any such stipulations and the terms of the remainder of this Agreement, then the stipulations on Exhibit "B" shall control.

18. **Expiration of Offer.** If this Agreement is first prepared and signed by one party and delivered to the other, it shall (before signed by the receiving party) constitute an offer that expires on **Thursday February 19, 2015 at 5:00PM EST** unless earlier accepted by signing and returning it to the offering party. The offer may be withdrawn by the offering party before acceptance by written notice to the other party before acceptance.

IN **WITNESS WHEREOF,** the undersigned have hereunto set their respective hands and seals on the dates set forth below.

**SELLER:**

Dennis G. Neville

By: _____

Title: Owner

Date: 2-11-15

**PURCHASER:**

Feeding the Valley Food Bank

By: _____

Title: Executive Director

Date: 2-12-2015

**BROKER:**

Jordan Hart Commercial Services, LLC
Company, Brokerage License # H-44904

By: _____
Title: Member
Date: 2·11·15

**BROKER:**

Coldwell Banker Commercial
Kennon, Parker, Duncan & Davis Realtors
Company Brokerage License #

By: _____
Title: Member
Date: 2-11-15

# EXHIBIT "A"
## TO COMMERCIAL REAL ESTATE SALES AGREEMENT

## LEGAL DESCRIPTION

Lot 300 Re-Plat of Part of Land Lot 40, 8th District.

Better known as:
7607 Veterans Parkway Columbus, Ga 31909
Map 73 Block 21 Parcel 2B

As shown on Exhibit "A-1" attached hereto.

Seller _____    Purchaser _____    Broker _____ scc
To be initialed:

# EXHIBIT "B"
## TO COMMERCIAL REAL ESTATE SALES AGREEMENT

### SPECIAL STIPULATIONS

1. This Commercial Real Estate Sales Agreement shall be subject to the Bankruptcy Court approval.

2. The Due Diligence Period referred to in Paragraph 6(b) shall begin the day that the Bankruptcy Court approves the sale of the property to Feeding the Valley Food Bank.

3. The Seller shall have ~~thirty (30)~~ ninety (90) days from the Closing of the property to vacated the property.

LEASES TO WHICH PROPERTY IS SUBJECT

1. _____

2. _____

3. _____

Seller [initialed]    Purchaser [initialed]    Broker [initialed] scc
To be initialed:



## CERTIFICATE OF SERVICE

This is to certify that I have this day served a true and correct copy of the MOTION FOR AUTHORIZATION TO SELL REAL PROPERTY FREE AND CLEAR OF LIENS AND FOR RESERVATION OF SURCHARGE RIGHTS UNDER 11 U.S.C. § 506 (c) and NOTICE OF HEARING by First Class Mail with sufficient postage affixed thereto to all of those listed on the official matrix attached hereto.

This the 17th day of February, 2015.

                                                PAGE, SCRANTOM, SPROUSE,
                                                TUCKER & FORD, P.C.

                                        By:  s/Stephen G. Gunby
                                                 Stephen G. Gunby
                                                 Ga. Bar No.: 315212

1111 Bay Avenue, Third Floor
P. O. Box 1199
Columbus, Georgia  31902            Attorneys for Debtor
(706) 243-5630
sgg@psstf.com

N0701-0001-30

```
Label Matrix for local noticing          Columbus Community Bank              Whittlesey Avi8tors, LLC
113G-4                                   c/o H. Owen Lee                       c/o Flournoy & Calhoun Realtors
Case 14-40729                            P.O. Box 1676                         2520 Wynnton Rd
Middle District of Georgia               Columbus, GA 31902-1676               Columbus, GA 31906-2184
Columbus
Tue Feb 17 11:33:40 EST 2015

4                                        Beau Rivage Casino                    Columbus Community Bank
901 Front Avenue                         875 Beach Blvd                        5604 Whittlesey Blvd
P.O. Box 2147                            Biloxi, MS 39530-4299                 Columbus, GA 31909-3026
Columbus, GA 31902-2147


Columbus Community Bank                  DSBV Property, LLC                    (p)GEORGIA DEPARTMENT OF REVENUE
c/o H. Owen Lee, Esq.                    6421 Cape Cod Drive                   COMPLIANCE DIVISION
P. O. Box 1676                           Columbus, GA 31904-2943               ARCS BANKRUPTCY
Columbus, GA 31902-1676                                                        1800 CENTURY BLVD NE SUITE 9100
                                                                               ATLANTA GA 30345-3202


Hardrock Casino                          Harrah's Casino                       INTERNAL REVENUE SERVICE, CIO
777 Beach Blvd                           228 Poydras St.                       P.O. BOX 7346
Biloxi, MS 39530-4300                    New Orleans, LA 70130-1641            2970 MARKET STREET
                                                                               PHILADELPHIA, PA 19104-5002


Office of United States Trustee          Premier Entertainment Biloxi LLC d/b/a Hard    Southeast Canners, Inc.
c/o Amber L. Bagley                      777 Beach Blvd                        c/o George A. Kurltyandchick
Trial Attorney                           Biloxi, MS 39530-4300                 Womble Carlyle
440 MLK Jr Blvd  Ste 302                                                       271 17th Street, Suite 2400
Macon, GA 31201-7987                                                           Atlanta, GA 30363-6215


Southeast Canners, Inc.                  Technology Insurance Company          U.S. Trustee - MAC
c/o John A. Thomson, Jr.                 c/o AmTrust North America, Inc.       440 Martin Luther King Jr. Boulevard
Womble Carlyle Sandridge & Rice, LLP     Attn: Accounts Payable Collection Manage    Suite 302
271 17th Street, N.W., Suite 2400        800 Superior Avenue East              Macon, GA 31201-7987
Atlanta, GA 30363-6215                   Cleveland, OH 44114-2613


Dennis Gary Neville                      Stephen G Gunby                       Stephen G. Gunby
507-5 Biggers Road                       Page Scrantom Sprouse Tucker & Ford, PC    Page Scrantom Sprouse Tucker & Ford, PC
Columbus, GA 31904-1145                  P.O. Box 1199                         1111 Bay Avenue, 3rd Floor
                                         1111 Bay Avenue, Third Floor          Columbus, GA 31901-5266
                                         Columbus, GA 31901-5266
```

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).


```
GEORGIA DEPARTMENT OF REVENUE            (d)Georgia Department of Revenue
COMPLIANCE DIVISION                      P.O. Box 161108
ARCS - BANKRUPTCY                        Atlanta, GA 30321
1800 CENTURY BLVD NE, SUITE 9100
ATLANTA, GA 30345-3205
```

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(d)Whittlesey Avi8tors
c/o Flournoy & Calhoun Realtors
2520 Wynnton Rd
Columbus, GA 31906-2184

End of Label Matrix
Mailable recipients    20
Bypassed recipients     1
Total                  21